# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **ARTHUR W. HAYES,** | : | **Case No. 1:05 cv 1800** |
| | : | |
| **Plaintiff,** | : | **JUDGE KATHLEEN O'MALLEY** |
| | : | |
| **v.** | : | |
| | : | |
| **MID-OHIO SECURITIES, CORP.,** *et al.*, | : | <u>**ORDER**</u> |
| | : | |
| **Defendants.** | : | |

This is a securities fraud case.  Jurisdiction has been invoked pursuant to 28 U.S.C. § 1332.

Plaintiff Arthur Hayes (Hayes) brings suit against Mid-Ohio Securities, Corp. (Mid-Ohio) alleging, *inter alia,* that Mid-Ohio violated Ohio Rev. Code § 1707.44 by selling a security that was not registered by coordination or qualification, was not the subject matter of a transaction that was registered by description, and was not exempt from the registration requirements of Ohio securities law.

Pending now is Mid-Ohio's Motion to Dismiss due to Statute of Limitations (Doc. No. 3).[1]  For the reasons set out below, Mid-Ohio's Motion is <u>**GRANTED**</u>.

---

[1] Mid-Ohio has not set forth the Civil Rule under which it brings its Motion to Dismiss, and Rule 12(b) does not address objections based upon a time bar by the statute of limitations.  Nevertheless, the prevailing rule is that a complaint showing on its face that relief is barred by an affirmative defense is properly subject to a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.  *Rauch v. Day & Night Manu. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978).  If the timeliness defense is not apparent on the face of the complaint, it may still be raised by a motion to dismiss accompanied by affidavits or other evidentiary matter.  *City of Painesville v. First Montauk Financial, Corp.*, 178 F.R.D. 180, 193 (N.D. Ohio 1998)(internal citations omitted).

**Background**

In May 2000, Hayes consulted with Philip Mehl (Mehl) to discuss retirement planning.  Hayes recommended that Mehl invest $328,000 from his Individual Retirement Account (IRA) in a company called MP3Entertainment.com (MP3).  Mehl suggested, among other things, that Hayes purchase a promissory note that would be guaranteed by a bond.  Mehl apparently assured Hayes that structuring the transaction this way would make it risk free.

To initiate the transaction, Mehl explained, Hayes would have to transfer funds sufficient to cover the purchase price from his current IRA account to a self-directed IRA, with Mid-Ohio as the custodian of the funds.  Hayes executed a Mid-Ohio "IRA Account Transfer" form that was supplied by Mehl, as well as a Mid-Ohio "Direction of Investment" form requesting that Mid-Ohio subscribe for the investment.

On or before July 6, 2000, Mid-Ohio transmitted funds from Hayes' Mid-Ohio account to MP3 for the purchase of a promissory note.  On July 19, 2000, United Assurance Company, Ltd. (United Assurance) issued to MP3 a guarantee bond on the promissory note for the benefit of Hayes.  By February 2001, MP3 defaulted on the note purchased by Hayes.  United Assurance subsequently failed to reimburse Hayes' purchase money.  Hayes filed a complaint against Mid-Ohio on July 15, 2005.

Hayes does not claim that Mid-Ohio induced him to make the investment or even made any affirmative representations to him with respect to the transactions.  Hayes simply contends that Mid-Ohio sat silently by while his funds were transferred in and out of Mid-Ohio's custody, despite knowledge of MP3's (or Mehl's) fraudulent activities.

**Standard of Review**

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), including those brought on

2

statute of limitations grounds, the Court must take the allegations in the complaint as true and construe those allegations in a light most favorable to the plaintiff. *Summit Health, Ltd. v. Pinhas*, 111 S.Ct. 1842, 1845 (1991); *Dana Corporation v. Blue Cross & Blue Shield*, 900 F.2d 882 (6th Cir. 1990); *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 489 (6th Cir. 1990). The Court need not accept as true, however, a legal conclusion couched as a factual allegation. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). The Court is to dismiss the complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

A court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint, even if not attached, if such materials are public records or are otherwise materials appropriate for the taking of judicial notice. *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001); *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003), *cert. denied*, 540 U.S. 1183 (2004). Consideration of such materials does not convert the motion into one for summary judgment. *Bovee*, 272 F.3d at 360-61. But a court must only take judicial notice of facts which are not subject to reasonable dispute. *Passa v. City of Columbus*, 123 Fed. App. 694 (6th Cir. 2005).

### Discussion

The only issue presently before the Court is whether Hayes' complaint was timely filed. The Court concludes that is was not.

Count 1 of Hayes' complaint asserts claims based upon the illegal sale of a security. It is alleged that Mid-Ohio violated Chapter 1707 of the Ohio Revised Code through, *inter alia*, the sale of a security that was not registered, was not the subject matter of a transaction that was registered, and was not

3

exempt from the registration requirements.  Counts 2 through 5 of the complaint assert common law claims - - including civil aiding and abetting, civil conspiracy, and fraud - - for various activities alleged to be in "violation of federal and state securities laws."

All of the causes of action identified in Hayes' complaint arise and flow out of a common allegation that there was an illegal sale of a security and/or an illegal investment in a security.  All of Hayes' claims, therefore, directly relate to the alleged status of the promissory note as an illegal security.  "Ohio law is clear that because [the] fraud claims arise out of or are predicated on the sale of securities, they are governed by the specific statute of limitations set forth in Ohio Rev. Code § 1707.43(B); not the four-year general statute of limitations for fraud claims found in Ohio Rev. Code § 2305.09." *Wyser-Pratte Mgmt. Co. v. Telxon Corp.*, 413 F.3d 553, 561 (6th Cir. 2005).

Hayes argues in his Brief in Opposition that his common law claims are predicated upon Mid-Ohio's faithless performance as his IRA custodian, and that, accordingly, none of his common law claims are governed by the statute of limitations for securities claims.  Hayes does not cite to any alternative statute of limitations he believes should apply to those common law claims, however, and cites no case law in support of his contention.  Even a cursory reading of Hayes' complaint discloses the weakness of his contentions.

As Hayes points out in his Brief, his First Cause of Action against Mid-Ohio is one for violation of Ohio's securities law.  Hayes argues that liability for violation of Ohio's securities law is extended beyond the actual seller/issuer of the security, and that the broad language of Ohio's securities laws must be construed expansively to protect the investing public.  Hayes describes Mid-Ohio as a "purchaser" of securities who also facilitates "sales" of securities to the public.  His factual allegations as to the impropriety of Mid-Ohio's actions are all grouped under a description of "Mid-Ohio's ongoing and

4

continuing violations of Ohio's blue sky laws."

Given the consistent nature of his allegations - all describing Mid-Ohio's alleged involvement in an illegal investment scam - the Court easily concludes that Section 1707.43(B) of the Ohio Revised Code applies to <u>all</u> of Hayes' claims. *Wyser-Pratte Mgmt. Co.*, 413 F.3d at 561; *see also Wuliger v. Anstaett*, 363 F. Supp. 2d 917, 933-35 (N.D. Ohio 2005)(finding that the plaintiff's claims for fraud in the inducement, breach of contract, unjust enrichment, conversion, breach of fiduciary duty and/or breach of covenant to act in good faith and breach of covenant of fair dealing, and intentional or negligent misrepresentation arose "from the sale of the viatical investments" and were thus subject to the same statute of limitations applicable to the claims for breach of Ohio's securities laws).

Section 1707.43(B) of the Ohio Revised Code provides:

> No action for the recovery of the purchase price as provided for in this section, and no other action for any recovery based upon or arising out of a sale or contract for sale made in violation of Chapter 1707 of the Revised Code, shall be brought more than two years after the plaintiff knew, or had reason to know, of the facts by reason of which the actions of the person or director were unlawful, or more than five years from the date of such sale or contract for sale, whichever is the shorter period.

Therefore, to be timely, Hayes must have brought his complaint within the *shorter* period of <u>either</u>: 1) two years from the time he knew, or had reason to know, of Mid-Ohio's alleged unlawful actions; or 2) five years from the date, or contract, of sale. Ohio Rev. Code § 1707.43(B). Mid-Ohio contends that Hayes' complaint is untimely under <u>both</u> prongs of Section 1707.43(B). Because the Court concludes

5

that Hayes' complaint is untimely under the first prong, it declines to address the second.[2]

Turning to the first prong of the statute, the first question posed by Mid-Ohio's Motion is at what point did Hayes have sufficient notice of Mid-Ohio's allegedly unlawful actions to trigger the running of the limitations period.  Because Hayes filed his current complaint on July 15, 2005, the relevant inquiry is whether Hayes "knew, or had reason to know, of the facts by which the actions of [Mid-Ohio] were unlawful" at some point prior to two years before the current filing date (i.e., did Hayes have sufficient notice prior to July 15, 2003).  The Court finds that Hayes had sufficient notice by no later than October 2001; therefore, the statute began to run long before July 15, 2003 and Hayes' complaint filed on July 15, 2005 is untimely.

The Sixth Circuit has expressly found that O.R.C. § 1707.43(B) is governed by the same principles that govern the statute of limitations for claims under the federal securities laws.  *Wyser-Pratte*, 413 F.3d at 562.  This period is triggered by what the Sixth Circuit describes as "inquiry notice." *New England Health Care*, 336 F.3d at 500.  This is an <u>objective</u>, two-pronged inquiry.  *Wyser-Pratte*, 413 F.3d at 563, fn9.  "Knowledge of suspicious facts" - often called "storm warnings" - will trigger a duty to investigate.  The "limitation period [then] begins to run only when a reasonably diligent investigation would have discovered the fraud." *New England Health Care*, 336 F.3d at 501.  In other

---

[2]     Both parties discuss the second prong of Ohio Rev. Code § 1707.43(B) at length in their briefs.  Mid-Ohio claims the date of sale for purposes of this action was on or before July 6, 2000, while Hayes asserts that the sale was not final until July 19, 2000.  Because this action was commenced between those two dates in 2005, this difference, though seemingly small, is critical.  Though Mid-Ohio makes some strong arguments in support of its position, given its other conclusions in this Order, the Court need not resolve this dispute.  The statute on its face provides that the *shorter* period of <u>either</u> five years from the date of sale or two years after the date of notice shall apply.  Here, two years from the date of notice, which the Court finds occurred well prior to July, 2003, is the shorter period.

words, the clock will start ticking automatically at the time "when a plaintiff should have discovered, by exercising reasonable diligence, the facts underlying the alleged fraud." *Wyser-Pratte*, 413 F.3d at 562-63 (citing *New England Health Care*, 336 F.3d at 501).

Under this standard, the first question is "when "storm warnings" were on the radar sufficient to alert [Hayes] that things were amiss," thereby triggering Hayes' duty to investigate. The next question is when, upon investigation, the facts underlying Mid-Ohio's alleged illegal and fraudulent activities would have been discovered. *Wuliger*, 363 F.Supp. at 925. Circumstances must be sufficient to place Hayes on notice as to serious problems with his investment. It is not necessary, however, that Hayes have knowledge of <u>all</u> facts necessary to bring an action for the requisite inquiry notice to be triggered. *Wuliger*, 363 F. Supp. at 925-26.

Mid-Ohio asserts that Hayes was aware that he had been defrauded by the illegal sale of securities by October of 2001, far more than two years before the complaint in this case was filed. In support of this contention, Mid-Ohio has attached to its Motion certain public records filed by Hayes in the State of Florida which it says discloses the detailed nature of Hayes' knowledge. Specifically, Mid-Ohio has attached a complaint filed by Hayes against Mehl and various financial and investment institutions alleging, *inter alia*, that Mehl was an unlicensed securities broker and that the defendants participated in the illegal sale of a security and/or an illegal investment based, in part, on the investment in the MP3 promissory note. That complaint was filed in Martin County, Florida on October 3, 2001.

Mid-Ohio claims that "storm warnings" were obviously present no later than October 3, 2001 when Hayes filed his complaint for securities fraud against Mehl and various financial and investment institutions in a Florida state court. Based on his own allegations, as of that point in time Hayes knew that MP3 had defaulted on the Note, knew that the Mehls had engaged in fraud when they assured him

7

the investment was risk free, knew that the Mehls were not licensed broker dealers, knew that the securities were unregistered  in violation of applicable registration requirements, and knew that United Assurance had failed to reimburse him pursuant to the guarantee bond.  Also as of that point, Hayes - as alleged in his complaint - had hired a lawyer to represent his interests and investigate the circumstances surrounding his failed investment.

As to Mid-Ohio specifically, as of October 2001, Hayes knew that the Mehls had directed him to Mid-Ohio, had provided him with Mid-Ohio's forms, and that Mid-Ohio had transferred Hayes' money for purposes of purchasing a promissory note from MP3 that Hayes considered to be a fraudulent security.  Based on these facts, Mid-Ohio asserts that Hayes had more than adequate "storm warnings" of an illegal securities transaction to trigger a duty to investigate as to Mid-Ohio and sufficient knowledge of Mid-Ohio's role in the transaction to discover any alleged impropriety by it.

Hayes does not dispute the existence or validity of the Florida complaint.  Rather, he argues that: (1) this Court may not consider the allegations in the complaint in the procedural context of a Motion to Dismiss; and, (2) the filing of the Florida complaint is not sufficient to give rise to inquiry notice *as to Mid-Ohio* because Hayes did not know the facts supporting his current claims that Mid-Ohio acted unlawfully.

As to Hayes' procedural argument, Hayes, in Footnote 1 on page 12 of his Brief in Opposition, has "moved" the Court not to consider the Florida complaint.  Alternatively, Hayes requests that the Court convert Mid-Ohio's Motion to Dismiss into one for summary judgment and grant Hayes leave to assemble evidentiary materials sufficient to oppose such a motion.  In support of his request, Hayes cites to *Passa v. City of Columbus*, 123 Fed. App. 694 (6th Cir. 2005).  There, the Sixth Circuit held that, for purposes of a Motion to Dismiss, the district court's reliance upon a written description of the City of

8

Columbus Check Resolution Mediation Program on the Columbus City Attorney's website was not proper judicial notice of a "public record." *Passa* did not, however, carve out a blanket prohibition against judicial notice of <u>any</u> public record on a Motion to Dismiss.  The Court specifically acknowledged that "[a]ll circuits to consider the issue have noted that a court may take judicial notice of at least some documents of public record when ruling on a Rule 12(b)(6) motion." *Passa*, 123 Fed. App. at 697.  *Passa* simply cautioned that a court may only take judicial notice of a public record whose existence or contents prove facts whose accuracy cannot reasonably be questioned.  It did not wholly eradicate judicial notice in the context of a Motion to Dismiss.[3]

*Passa* is not the situation presented here because the public record attached to Mid-Ohio's Motion is one whose accuracy cannot reasonably be questioned.  Upon filing the Florida complaint, Hayes, through his attorney, attested to the truth of the matters contained therein.  It would be inconceivable for Hayes to now dispute the accuracy or truth of his own filing.  Presumably this is why Hayes has <u>not</u> disputed the validity of the Florida complaint.

Mid-Ohio correctly replies to Hayes' procedural argument by citing to Sixth Circuit case law holding that court documents that are a matter of public record can be attached to a motion to dismiss without converting it into one for summary judgement.  Those decisions involved judicial notice of a plea bargain on court documents, and of a municipal policy contained in a city's Police Procedure

---

[3]        The *Passa* court was admittedly concerned about the degree - or lack thereof - of notice (and opportunity to be heard) that is afforded to the non-moving party when a public record is attached to a Motion to Dismiss.  The court observed that "[i]n order to preserve a party's right to a fair hearing, a court, on a motion to dismiss, must only take judicial notice of facts which are not subject to reasonable dispute." *Passa*, 123 Fed. App. at 697.  But it cannot be said that Hayes has been unduly surprised by attachment of the Florida complaint which Hayes' lawyer filed on his behalf in 2001.  Hayes has been well aware of its existence and has had the opportunity to dispute its validity in his responsive brief - which he has not done.

9

Manual.  Most relevant, however, is the case of *New England Health Care Employees Pension Fund v. Ernst & Young, infra.*  There, the Sixth Circuit specifically allowed judicial notice of a <u>prior complaint</u> filed by New England Health Care Employees Pension Fund against Fruit of the Loom more than two years earlier and which alleged unlawful activities similar to those contained in the then current complaint filed by New England Health Care Employees Pension Fund against Ernst & Young.  Under the authority of the *New England* decision, Mid-Ohio's attachment of the Florida complaint previously filed by Hayes against Mehl (and others) is proper in the context of a Motion to Dismiss and Hayes' objections are not well taken.

Hayes' more substantive argument is similarly unavailing.  As the Sixth Circuit has repeatedly pointed out, Hayes did not need to <u>know</u> all of the facts by which he alleges Mid-Ohio's actions were unlawful.  *See infra*.  If "storm warnings" were present sufficient to cause a reasonable person to investigate, he had a duty to do so.  And, if the circumstances were such that reasonable diligence in that investigation would have discovered any impropriety on the part of Mid-Ohio, the statute begins to run regardless of what Hayes asserts he <u>actually knew</u> when he filed his Florida complaint.

Quite simply, Hayes had all the information he needed to assert his current claims against Mid-Ohio in October 2001 - or certainly he had such information soon thereafter.  It cannot be said that Mid-Ohio "covertly" served as the conduit through which Mehl sold the illegal security.  Hayes knew where his money went, and when, and knew each link in the chain between him and MP3.  He also knew that he had been defrauded in that transaction.

Hayes had "storm warnings" triggering a duty to investigate the fraudulent scheme by no later than October 2001.  During his investigation of the actions of Mehl and the other defendants, triggered by these suspicious facts, a reasonable person in Hayes' position would have also investigated the

10

actions of Mid-Ohio, MP3, and United Assurance.  Hayes should have known well before July of 2003 (two years prior to the filing of the current complaint), through the exercise of reasonable diligence, of the facts underlying his claim that Mid-Ohio participated in the allegedly fraudulent activities of Mehl and the various other financial and investment institutions that were the object of his Florida complaint. Thus, Hayes' complaint filed on July 15, 2005 was not filed within two years from the time the statute of limitations began to run and, therefore, is time-barred.

### Conclusion

In light of the foregoing, it is

ORDERED THAT Mid-Ohio's Motion to Dismiss due to Statute of Limitations is granted.

**IT IS SO ORDERED.**

s/Kathleen M. O'Malley
**KATHLEEN McDONALD O'MALLEY
UNITED STATES DISTRICT JUDGE**

**Dated: August 3, 2006**

11